IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE SHUTT, | : | 4:16-CV-1575 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| | : | |
| STACY PARKS-MILLER, | : | |
| *individually and in her official* | : | |
| *capacity,* | : | |
| and | : | |
| CENTRE COUNTY, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

MAY 4, 2017

**I.    BACKGROUND**

On July 29, 2016, Plaintiff, Michelle Shutt, filed a six-count complaint against her former employers, Centre County, and its District Attorney, Stacy Parks-Miller. Each Defendant has filed a motion to dismiss the complaint. Both motions will be granted as to the claims brought pursuant to 42 U.S.C. § 1983, namely Counts I and II. I decline to exercise supplemental jurisdiction over Counts III-IV. The complaint will therefore be dismissed without prejudice so that the Plaintiff may re-file her state law causes of action in the appropriate Court of Common Pleas, should she choose to do so.

1

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[1] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[2] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[3]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[4] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking

---

[1] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (*quoting Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[2] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[3] *Neitzke*, 490 U.S. at 327.

[4] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).

was appropriate under the Federal Rules."[5]  More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in Conley v. Gibson and replaced it with a more exacting "plausibility" standard.[6]

Accordingly, after Twombly and Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[9]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[10]

---

[5]  550 U.S. 544 (2007); 556 U.S. 662, 678 (2009), *Wasserman, supra* at 319-20.

[6]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that Twombly retired the Conley no-set-of-facts test").

[7]  *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

[8]  *Iqbal,* 556 U.S. at 678.

[9]  *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[10]  *Twombly*, 550 U.S. at 556.

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[12]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[13] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[14] "After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[15] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[16]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

---

[11] *Iqbal*, 556 U.S. at 679.

[12] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[13] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[14] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[15] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[16] *Iqbal*, 556 U.S. at 678.

> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[17]

I turn now to the Plaintiff's factual allegations, which I must accept as true on a Rule 12(b)(6) motion.

### B. Facts alleged in the complaint

Defendant Stacy Parks-Miller, hereinafter "Parks-Miller," has been District Attorney of Defendant Centre County since January 1, 2010. Plaintiff Michelle Shutt, hereinafter "Shutt," began employment as Parks-Miller's paralegal on June 5, 2012 and resigned for her position on January 6, 2014.

In October 2014, Shutt began working as a paralegal for the Masorti Law Group. On December 29, 2014, she told her new employer, attorney Philip Masorti, that while employed by Parks-Miller she witnessed Parks-Miller forge a common pleas judge's signature on a bail order. Shutt then prepared an affidavit to that effect that was provided to the Bellefonte Borough Police Department, the FBI, and the Pennsylvania Supreme Court's Disciplinary Board. Attached to the affidavit were emails sent by Parks-Miller to Shutt that Shutt had forwarded from

---

[17] *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

her county email account to her private email account prior to her resignation from the District Attorney's Office.

According to the complaint, when Parks-Miller learned of the affidavit, she began to investigate Shutt for "theft of emails." On January 20, 2015, the affidavit became public knowledge at a Centre County Commissioner's meeting when various attorneys brought it to the Commissioners attention for investigation. On January 24, 2015, the Bellefonte Borough Police Department executed a search warrant on Parks-Miller's office.

The investigation was later taken over by the Pennsylvania Attorney General's Office and submitted to a grand jury for investigation. Shutt was subpoenaed and testified that she had been directed by Parks-Miller to prepare a fake bail order; that she witnessed Parks-Miller forge the judge's signature; and that she was further directed by Parks-Miller to have the forged order docketed by the Centre County Prothonotary's Office.

On July 31, 2015, the state Attorney General's Office released a report indicating that a grand jury investigation found no criminal activity on the part of Parks-Miller. Consequently, the state Attorney General's Office declined to move forward with any criminal investigation against Parks-Miller.

That same date, Parks-Miller convened a press conference in front of the Centre County Courthouse. The transcription of her statements (at length) is as

follows:

>Well - thanks for coming. All right - it's been a long seven months but one of my favorite sayings is a lie can travel halfway around the world while the truth is still putting on its shoes. I am a true believer in justice and the criminal justice system but the truth has finally been revealed. I told everyone at the beginning that I am innocent and a grand jury full of strangers today says I was telling the truth. I do thank the grand jury for their hard work but I also believe in accountability and sometimes that's a dying art. The simple truth in this case is that Michelle Shutt is a liar.
>
>Ms. Shutt came into my office looking for a job after she was let go from a previous job because she cheated her employer. She was let go for under-ringing merchandise. She lied on that job application and when I caught that lie, she begged me to overlook it. I did, wanting to give people a second chance and that is a decision I deeply regret and while I'm tough and I can overlook things, I'm a real person. I have a family. She owes an apology to my grandmother and mother who wondered for the past seven months how someone who can lie publically and get away with it.
>
>This report is crystal clear. Ms. Shutt committed at least three crimes, a false report to police, a false report by writing it out and signing the affidavit and clearly committed felony perjury by testifying in front of the grand jury to these bold faced lies. I demand full criminal responsibility for this behavior. A district attorney is every bit as much a victim as anyone else. I demand that Shutt and anyone else who assisted, encouraged and supported her lies over all these months be investigated and prosecuted. This includes the Centre County Commissioners, their solicitor, Lou Glantz, who the report unequivocally said operated outside the bounds of the law, their authority.
>
>The commissioners balance budgets. They have been on a witch hunt for me. They tried to play police officer, investigator and they been trying to shatter my reputation with lies for months. The grand jury found specifically that I acted in accordance with the law while the commissioners inappropriately engaged the services of special counsel contrary to law. This was after my attorney specifically warned them of

this legal point and they ignored it. The impartial grand jury found as a fact that the commissioners disregarded clear statutory requirements in their action and they hired a special counsel spending and squandering tax payers' dollars contrary to law. They have made defamatory statements about me for seven months straight based upon lie after lie. This is men whose job it is to manage fiscal affairs of the government – period. Do you realize the magnitude of what the commissioners have done for the county by this witch hunt in the past seven months? They have been trying with a handful of other people to convince this county and my supporters that the district attorney and law enforcement in Centre County is corrupt with their lies and recently they've besmirched our judges. They are trying to convince the community that you shouldn't trust what's going on down here in Bellefonte, something's amiss.

And why? It all started when I beat Bernard Cantorna in a trial, in a case where a woman almost killed a child. He simply didn't take it well. He had a relationship with her. And he is business partners with Lou Glantz, the county solicitor. They decided to pay me back. They looked for a way to darken my character. I'm too hard on crime apparently. With the lying and conniving Michelle Shutt, who by the way the commissioners did not believe when she first tried to say I had her do campaign work They teamed up with her- Sean McGraw, Bernie Cantorna and Phil Masoriti - to stage this silly lie that has almost unglued our county over the last seven months. They lied at a meeting that started it all. We need to investigate her. We need to involve the Bellefonte police. They knew it had been reported to the Attorney General and they used every commissioner's meeting since then as a bullypulpit to defame me. Some of you bought it and printed it. I hope you now print my innocence with the same ferocity you printed their lies.

The commissioners invaded the district attorney's files and emails and phone records which is patently illegal. They endangered and squandered resources and they actually looked at ongoing investigations. These men who are only here to balance budgets and we had to sue them to stop it. Once I caught them, they said they wouldn't do it again. I had to sue them along with the judges to stop them from looking in files and actually compromising ongoing investigations and threatening police officers' safety.

8

Guess who the commissioners gave my records to? Sean McGraw and Bernie Cantorna, ignoring requests from other defense attorneys but favoring them. We have shown you these connections but the press has failed to print it. The same exact people who accused me of forgering.

Sean McGraw is Michelle Shutt's lawyer. He called her a whistle blower in the beginning perhaps hoping for a big lawsuit. Her firm said she was brave for telling the truth. Nothing can be further from the truth. She is a felon. They pretend, the commissioners pretend they are champions of open records, that is a smoke screen because we caught them breaking the law.

The lawsuit was only to keep them out of my records and to point people to me when they had an open records request. I handled open records requests during the Sandusky matter. I think I know how to operate within the bounds of the law. They have been selling you a smokescreen and you have been buying it. What did Judge Kurtz say about the commissioners when he learned how they were operating under the right to know law and breaking it? He said they broke the law, violated the constitution and violated my privacy. Sworn elected official in active office have violated the law. Where is that headline? He said their behavior was unconscionable. They gave out my private phone number knowing it was protected under the law. I received threats from people I prosecuted. One man whose brother I prosecuted threatened to pay me back with sexual violence. Where is that headline?

So what's going on down here at Willowbank? Criminal behavior by Michelle Shutt and others. That's what. I've beaten them at every turn. I won every frivolous motion filed by Sean McGraw who has ulterior motives to try to bolster Michelle Shutt. I won my civil lawsuit handily against the commissioners who were deemed law breakers by a judge who said their behavior was unconscionable and now I have been proven innocent of signing the judge's name. Each time the commissioners act more outrageous, they double down and destroy our county's faith and reputation across the state.

> But I tell Centre County citizens this - I will not be bullied by Centre County commissioners or people who seek to destroy my reputation with lies. I will remain your independent prosecutor. I will be the prosecutor you can trust. I will not be told who to prosecute and I will not be bullied by any club or clique. I will not be influenced or beholden to anyone. I will do what is right based upon the facts and I don't engage in cronyism or let politics enter the DA's office. It's not going to happen. I made promises to this community and they will not beat me down with lies. I respect the law and the constitution and I demand that everyone that was involved in this corruption be prosecuted in this matter and I will fight against corruption as your DA.
>
> This stops here and now and I will not stop until the right people are held accountable and I do urge the public to make smart decisions this Fall and vote those bums out or we will never return to normal down at this courthouse. A system cannot survive with unscrupulous people attacking other arms of government for petty and personal motives. They are tearing us apart down here and frittering away untold amounts of money for no good reasons other than personal agendas. People have a voice and come fall and you must use it. And I thank the grand jury for what they have done.

Several news sources picked up and re-published Parks-Miller's statements in various news articles. Several were, naturally, online sources, namely youtube.com, statecollege.com and philly.com. The other was the <u>Centre Daily Times</u>, a print newspaper, and principal newspaper of record in Centre County.

Parks-Miller filed a civil suit against Shutt and others, which was removed to this Court on September 9, 2015. I dismissed that action in its entirety. As to Shutt, the Parks-Miller action was dismissed as all the claims agianst her were based on her grand jury testimony, which I held to be immune from suit.

Shutt now alleges that due to Parks-Miller's actions, and statements, Shutt's "opportunities for employment in the legal field have been eliminated, as have her prospects for comparable employment." Her complaint against Parks-Miller sets forth her defamation theory.

C. Count I: 42 U.S.C. § 1983 Retaliation for Exercise of Activity Protected by the First/Fourteenth Amendment Rights (Against All Defendants)

In order for a plaintiff to prevail under 42 U.S.C. § 1983, he must establish two elements: first, that the conduct complained of was committed by a person acting under color of state law; and second, that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.[18]

"In general, constitutional retaliation claims are analyzed under a three-part test."[19] " Plaintiff must prove (1) that [it] engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation."[20]

In this matter, Shutt is alleging a First Amendment retaliation claim as incorporated by the Fourteenth Amendment. The *First Amendment* to the United

---

[18] *See Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993).

[19] *Mun. Revenue Servs., Inc. v. McBlain*, 347 Fed. Appx. 817, 823 (3d Cir. Pa. 2009) (internal citations omitted).

[20] *Id.*

States Constitution protects citizens right to speech. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."[21] "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority."[22]

"Thus, by engaging in retaliatory acts, public officials place informal restraints on speech "allowing the government to 'produce a result which [it] could not command directly.'"[23] "Such interference with constitutional rights is impermissible."[24] "[A] public official's malicious intent, taken alone, cannot

---

[21] *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000), *See ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."); *see also Pickering v. Board of Educ.*, 391 U.S. 563, 574, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968) (noting that retaliatory acts are "a potent means of inhibiting speech").

[22] *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 415-416 (4th Cir. 2006), *citing Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 674, 116 S. Ct. 2342, 135 L. Ed. 2d 843 (1996); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000); *see also Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) ("If the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited").

[23] *Suarez Corp. Indus.*, 202 F.3d at 685

[24] *Id. citing Perry v. Sindermann*, 408 U.S. 593, 597, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972) (alterations in original) (citation omitted).

amount to a retaliatory response."[25]

"A retaliation claim under 42 U.S.C. § 1983 must establish that the government responded to the plaintiff's constitutionally protected activity with conduct or speech that would chill or adversely affect his protected activity."[26] "The determination of whether government conduct or speech has a chilling effect or an adverse impact is an objective one -- we determine whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case."[27] "Because our analysis of the adverse impact is objective, it can be resolved as a matter of law."[28]

In the case at bar, I conclude that there is no retaliation as a matter of law as the Defendants did not engage in conduct that would chill a person of ordinary firmness. In "retaliation cases involving 'speech against speech' there should be a 'threshold of measurable harm required to move government response to public

---

[25] *Balt. Sun Co.,* 437 F.3d at 420.

[26] *Balt. Sun Co.*, 437 F.3d at 416, *citing Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *ACLU v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993).

[27] *Balt. Sun Co.*, 437 F.3d at 416, *citing Constantine*, 411 F.3d at 500; *Wicomico County*, 999 F.2d at 786; *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (tailoring adverse impact analysis to specific circumstances presented).

[28] *Balt. Sun Co.*, 437 F.3d at 416.

complaint from the forum of free speech into federal court.'"[29] A "state-law theory of per se defamation does not sufficiently demonstrate harm and therefore does not establish a federal retaliation claim."[30] The "alleged retaliation did not come in the form of denial of a permit or threat of a lost contract."[31] "Rather, it was a group of statements none very kind about" Shutt.[32]

"Retaliatory insults or accusations may wound one's soul, but by themselves they fail to cross the threshold of measurable harm required to move government response to public complaint from the forum of free speech into federal court."[33] Moreover, other circuits have held that allegedly defamatory statements alone are insufficient to deter a person of ordinary firmness from future speech.[34]

Although I have determined that Shutt does not have a Constitutional claim based on the statements made by Parks-Miller at the July 31, 2015 press conference, she may nevertheless have a state tort cause of action, to which the undersigned expresses no opinion.

---

[29] *Zaloga v. Borough of Moosic*, 841 F.3d 170, 177 (3d Cir. 2016) *citing Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011).

[30] *Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011).

[31] *Id.* at 646.

[32] *Id.*

[33] *Id.*

[34] *See, e.g., Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir.2010); *Mezibov v. Allen*, 411 F.3d 712, 722 (6th Cir.2005).

D.  Count II: Violation of 42 U.S.C. § 1983 False Public
    Statements (Against All Defendants)

The allegations set forth in Count II have confused both the parties and the Court, as there is no "false public statements" cause of action under federal law. The Court initially surmised that Shutt was attempting to federalize defamation, but this does not appear to be the case. In her brief opposing each Defendants' motion to dismiss, she explained that she is not, in fact, bringing a defamation claim under Section 1983. Shutt further clarified in her brief opposing Parks-Miller's motion that Count II is a "fourteenth amendment violation" of "her ability to pursue her chosen career and profession" and that "as she included damages to her occupation, Shutt has adequately pled a violation of their [sic] Fourteenth Amendment due process rights."[35] I respectfully disagree.

Shutt has not, nor can she, adequately plead a due process claim. The Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States."[36] "Reputation alone is not an interest protected by the Due Process Clause."[37]

---

[35] ECF No. 22 at 38.

[36] *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (holding that defamation by itself does not harm a liberty interest protected under the Fourteenth Amendment).

[37] *Dee v. Borough of Dunmore*, 549 F.3d 225 (3d Cir. 2008) (internal citations omitted).

Moreover, defamatory statements that curtail a plaintiff's business opportunities do not suffice to support a substantive due process claim.[38]

In order "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest. . . guaranteed by state law or the Constitution."[39] "In the public employment context, the "stigma-plus" test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest."[40] "To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements (1) were made publicly, and (2) were false."[41] Here, Shutt has alleged that Parks-Miller made false stigmatizing statements at the July 31, 2015 press conference.

The "plus" of the "stigma-plus" test can be termination or constructive discharge, without respect to whether the employee has a property interest in the lost job.[42] The Honorable Joy Flowers Conti, writing for the United

---

[38] *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399-404 (3d Cir. 2000)

[39] *Id.*

[40] *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) *citing Codd v. Velger,* 429 U.S. 625, 628 (1977).

[41] *Hill*, 455 F.3d at 225 (internal citations omitted).

[42] Id. at 238.

States District Court for the Western District of Pennsylvania, has succinctly explained when something other than the loss of government employment constitutes the necessary "plus" to maintain an action under the Fourteenth Amendment, as follows:

> The plus prong is typically termination of employment, but reputational damage that occurs "in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution" is actionable. *D & D Assoc., Inc. v. Bd. of Educ. of N. Plainfield*, 552 Fed.Appx. 110, 113 (3d Cir.2014) (*citing Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir.1989)); *Lockett*, 529 Fed.Appx. at 296; *Brown*, 470 Fed.Appx. at 91. Although deprivation of the "liberty to pursue a calling or occupation" or to "earn a living" have been deemed sufficient to satisfy the plus prong, a generalized "possible loss of future employment opportunities," and "financial harm" are insufficient to support a reputation-based due process claim. *Simpson v. Nicklas*, 500 Fed.Appx. 185, 188 (3d Cir.2012) (*citing Clark*, 890 F.2d at 620, and *Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir.1987)); *Thomas*, 463 F.3d at 297; Hill, 455 F.3d at 232-33; *see Arneault v. O'Toole*, 513 Fed.Appx. 195, 198-99 (3d Cir.2013) (loss of possible business prospects by being required to disclose an unfavorable fact on future applications does not satisfy the plus prong).[43]

The "plus" element of the "stigma-plus" test is what is lacking in the present action. First, Shutt voluntarily left her employment with Parks-Miller and Centre County well before the July 2015 press conference. Second, she has not alleged deprivation of another Constitutionally guaranteed right. Her generalized allegations regarding her inability to

---

[43] *Kahan v. Slippery Rock Univ. of Pennsylvania*, 50 F. Supp. 3d 667, 711 (W.D. Pa. 2014), *aff'd,* 664 F. App'x 170 (3d Cir. 2016)

pursue her paralegal career are insufficient.

This absent element in the "stigma-plus" test signals to this Court that this is merely a garden variety state law defamation claim as opposed to a more nuanced Fourteenth Amendment violation. Accordingly, Shutt's substantive due process claim for any reputational injury that decreased her ability to earn a living compels dismissal.

### III. CONCLUSION

Having concluded that there are no federal causes of action, and no basis upon which to permit amendment, as amendment would be futile,[44] I decline to exercise supplemental jurisdiction over the state law claims and will dismiss the action in its entirety. Dismissal will be without prejudice as to the state law claims.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[44] "Futility" means that the complaint even if amended, would still fail to state a claim upon which relief could be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).